# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 20, 2017

| | | |
|---|---|---|
| * * * * * * * * * * * * | | UNPUBLISHED |
| D.S., | * | Chief Special Master Dorsey |
| Petitioner, | * | No. 10-77V |
| v. | * | Attorneys' Fees and Costs; Special Master's Discretion; Administrative Time; Excessive Client Communication; Duplicative Billing; Life Care Planner Fees and Expenses; Reduction of Petitioner's Costs |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

Lisa A. Roquemore, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for petitioner.
Darryl R. Wishard, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On February 12, 2010, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that she suffered from the Miller-Fisher variant of Guillain-Barré Syndrome ("GBS") as a result of receiving the first dose of the human papillomavirus ("HPV") vaccine ("Gardasil") on or about February 21, 2007. A hearing was held on August 20, 2014, and the undersigned issued a ruling on entitlement finding petitioner entitled to compensation on May 19, 2015. Ruling on Entitlement dated May 19, 2015 (ECF No. 135).

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Background

On September 1, 2015, Lisa Roquemore was substituted as petitioner's counsel, replacing Thomas P. Gallagher. Interim fees and costs totaling $93,563.62 were awarded to Mr. Gallagher on November 20, 2015. Decision dated November 20. 2015 (ECF No. 155). Mr. Gallagher had previously replaced Scott Rooney as petitioner's counsel on August 21, 2012, and was awarded interim fees and costs totaling $31,000 on November 16, 2012. Decision dated November 16, 2012 (ECF No. 78).

On March 10, 2017, the undersigned issued a decision awarding compensation to petitioner based on respondent's proffer. Decision dated March 10, 2017 (ECF No. 212). On June 23, 2017, petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion ("Pet. Mot.") dated June 23, 2017 (ECF No. 225). Petitioner requests attorneys' fees in the amount of $154,306.50 and costs in the amount of $42,244.35. (Id. at 2.) Additionally, in accordance with General Order #9, petitioner's counsel represented that petitioner incurred $16,560.82 in out-of-pocket expenses.

On September 14, 2017, the undersigned issued an order requesting further explanation and documentation regarding a number of issues with petitioner's motion. Order dated September 14, 2017 (ECF No. 228). Petitioner filed a status report in response on September 19, 2017, in which she included an updated billing log that requested a further $2,863.10 in fees for time spent responding to the order. Status Report dated September 19, 2017 (ECF No. 229). This increases this total amount of attorneys' fees requested to $157,169.60, and the total request to $215,974.77.

On June 26, 2017, respondent filed a response to petitioner's motion. Respondent's Response ("Resp. Resp.") dated June 26, 2017 (ECF No. 227). Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Id. at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. at 2. Respondent "respectfully recommends that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." Id. at 3.

Petitioner has filed no reply to respondent's response to her motion. This matter is now ripe for adjudication. For the reasons set forth below, the undersigned awards petitioner $170,070.65 in attorneys' fees and costs and $7,307.94 in reimbursement for her own out-of-pocket expenses, resulting in a total award of $177,378.59.

## II. Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(3) (1). Petitioner in this case was awarded compensation pursuant to a proffer, and therefore she is entitled to an award of reasonable attorneys' fees and costs.

2

### A. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348. Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994), and may increase or reduce the initial fee award calculation based on specific findings. Avera, 515 F.3d at 1348.

In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### i. Reasonable Hourly Rate

Petitioner requests compensation for work performed by Ms. Roquemore from 2015-2017. Ms. Roquemore requests a rate of $365.00 per hour for work performed in 2015, and $400.00 per hour for work performed in 2016 and 2017. See Pet. Mot. at 6-7. Petitioner also requests compensation for work performed by Ms. Roquemore's paralegal. Id. at 6. Ms. Roquemore requests a rate of $125.00 per hour for work performed by her paralegal in 2015, and $135.00 per hour for work performed by her paralegal in 2016 and 2017.

The requested hourly rates for Ms. Roquemore and her paralegal have previously been found reasonable. See Davis v. Sec'y of Health & Human Servs., No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2017); Taylor v. Sec'y of Health & Human Servs., No. 14-816V, 2016 WL 5390169 (Fed. Cl. Spec. Mstr. Sept. 2, 2016); Raicevic v. Sec'y of Health & Human Servs., No. 14-554V, 2016 WL 5362695 (Fed. Cl. Spec. Mstr. Aug. 31, 2016). These rates are also consistent with the ranges provided in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, *16 (Fed. Cl. Spec. Mstr. Oct. 18, 2016), and the Office of Special Masters Fee Schedule[3] for an attorney with Ms. Roquemore's experience

---

[3] See OSM Attorneys Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed September 29, 2017).

and familiarity with the Program. The undersigned also finds these rates to be reasonable and awards them in full.

### ii. Reasonable Hours Expended

The second factor in the lodestar formula is a reasonable number hours expended. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Shorkey v. Sec'y of Health and Human Servs., No. 15-768C, 2017 WL 2119118 (Fed. Cl. Spec. Mstr. April 21, 2017); Saxton v. Sec'y of Health and Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008).

It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing the petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### a. Excessive Client Communication

The undersigned has previously found it reasonable to reduce the fees paid to petitioners due to excessive billing and intra-office communication. See Panaitescu v. Sec'y of Health & Human Servs., No. 16-753V, 2017 WL 4876036 (Fed. Cl. Spec. Mstr. Oct. 2, 2017) (reduced counsel's overall fee award due to billing for excessive email correspondence with the client and with each other); See also Ericzon v. Sec'y of Health & Human Servs., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced counsel's overall fee award by 10 percent due to excessive and duplicative billing); See also Carter v. Sec'y of Dep't of Health & Human Servs., No. 04-1500V, 2007 WL 2241877, at *6-7 (Fed. Cl. July 13, 2007) (reduced counsel's billable hours for an excessive amount of communication with their client.

After carefully reviewing the billing records submitted with petitioners' motion, the undersigned finds that counsel billed for excessive communication with her client.[4] Ms. Roquemore billed a combined 135.3 hours of her total 334.7 hours spent on the case for emails and telephone calls with D.S. See generally Pet. Mot. at Exhibit 2; see also Status Report dated September 19, 2017, Attachment A at 36-37. While the undersigned acknowledges that client communication is an important aspect of representation, the number of emails and phone calls

---

[4] See Pet. Mot., Exhibit 2 at 2-8, 10-11, 13-17, 19-23, 25-29, 31-38, 40-42, 44-46, 47-50, 52-54, 56-61, 63-69, 71-75, 77-85, 87-93, 95-97, 99; see also Status Report dated September 19, 2017, Attachment A at 36-7.

4

exchanged between Ms. Roquemore and D.S. is excessive and far exceeds what the undersigned normally sees in billing records.

Ms. Roquemore also appears to have frequently sent drafts of her motions, emails, and briefs to D.S. for her review and suggested edits before filing or sending them.[5] Ms. Roquemore billed separately for time spent drafting the document, sending the document to D.S., receiving the document with edits from D.S., revising the document, and finally for filing it. For example, on September 24, 2015, Ms. Roquemore billed three hours to draft, revise, and finalize a reply brief regarding redaction. Pet. Mot., Exhibit 2 at 7. She then billed time for drafting an email to D.S. "attaching the draft Reply for her review and comment" later that day. Id. A few days later, on September 28, 2015, Ms. Roquemore billed time for reviewing D.S.'s revisions, drafting the proposed revisions, and for emailing the revised draft to D.S. Id. The following day, September 29, 2015, Ms. Roquemore billed again for reviewing an email from D.S. with further revisions, for making another round of revisions to the draft, and then for sending another version of the draft for D.S. Id. at 7-8. On September 30, 2015, Ms. Roquemore again billed time for reviewing another email from D.S. with more revisions, time for responding to D.S. and incorporating her revisions, and finally for finalizing the draft before filing. Id. Similarly, on October 6, 2016, Ms. Roquemore billed time for reviewing an email from D.S. with her comments on the status report Ms. Roquemore was planning to file, and also for time spent revising the status report to incorporate D.S.'s edits. Id. at 64. Ms. Roquemore then repeated the same practice of sending her drafts to D.S. for review and revisions on October 10, 2016, when she was drafting a brief regarding disability insurance for D.S. Id. at 65.

Ms. Roquemore has previously been criticized for excessive billing practices. See Brown v. Sec'y of Health & Human Servs., No. 09-426, 2013 WL 1790212 (Fed. Cl. Spec. Mstr. Apr. 8, 2013) (finding that some of the hours billed by Ms. Roquemore were excessive and unreasonable); see also Sanchez v. Sec'y of Health & Human Servs., No. 11-685, 2016 WL 909186 (Fed. Cl. Spec. Mstr. Feb. 17, 2016) (reducing Ms. Roquemore's billable hours due to excessive billing practices). Former Special Master Golkiewicz concluded that, "Ms. Roquemore spends far greater hours than her contemporaries handling her cases." Torday v. Sec'y of Health & Human Servs., No. 07-372, 2011 WL 2680687, at *3 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). While keeping her client informed of updates in the case is otherwise reasonable, the extent to which Ms. Roquemore billed for repeated communication and guidance from her client is excessive and unreasonable.

### b. Billing for Administrative Time

It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services . . . should be considered as normal overhead office costs included within the attorneys' fee rates"). Activities that are "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who

---

[5] See Pet. Mot., Exhibit 2 at 7, 23, 27, 40-1, 49, 54, 64-5, 90-1, 93

5

performs them." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989). Attorneys may not separately charge for clerical or secretarial work because those changes are overhead for which the hourly rate accounts. See Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed.Cir.1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

Ms. Roquemore's billing records include several entries for performing administrative tasks such as reviewing invoices, setting up meetings, and troubleshooting issues with technology.[6] For example, on January 1, 2016, Ms. Roquemore bills time for setting up a status conference with the undersigned, and on December 15, 2016, she bills time for setting up a phone call with D.S. Pet. Mot., Exhibit 2 at 26, 72.

These entries do not constitute billable time, and the undersigned will thus reduce the final fee award accordingly.

### c. Duplicative Billing Entries

The undersigned has previously found it reasonable to reduce the fees paid to petitioners due to duplicative billing and billing for intra-office communication. See Ericzon v. Sec'y of Health & Human Servs., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced counsel's overall fee award by 10 percent due to excessive and duplicative billing); Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health & Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced counsel's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health & Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings).

After reviewing the billing records, the undersigned finds that counsel included entries that are duplicative due to both Ms. Roquemore and her paralegal billing for the same meeting with each other.[7] For example, on December 12, 2016, Ms. Roquemore billed time for a conference with her paralegal regarding difficulty opening up PDF files, and that same day her paralegal billed for a conference with Ms. Roquemore regarding the same issue. Pet. Mot., Exhibit 2 at 71-2. On March 10, 2017, Ms. Roquemore and her paralegal both billed for the same conference with each other, this time regarding a missing expense to be included with her motion. Pet. Mot., Exhibit 2 at 89.

---

[6] See Pet. Mot. at 11, 26, 32, 56, 65, 72, 87.

[7] See Pet. Mot. at 7, 11, 35, 71-2, 89.

Ms. Roquemore's billing records also include entries that are duplicative in that they include the exact same text and description as other entries with no variation to explain how the time was spent performing that particular task. For example, the billing entries for October 5 and October 6, 2016, include the same billing entry to "[c]onduct docket review of Petitioner and trial brief (.3)." Pet. Mot., Exhibit 2 at 64. Additionally, the billing entry for December 12, 2016, is copied word-for-word into the beginning of the billing entry for December 14, 2016. Pet. Mot., Exhibit 2 at 71-72. On March 15, 2017, both Ms. Roquemore and her paralegal billed for drafting the same notice, and even included the same amount of time expended. Pet. Mot., Exhibit 2 at 90-91. These entries are clearly duplicative and do not reflect the actual work performed well enough to determine the reasonableness of the hours expended on each task.

Due to the volume of excessive, duplicative, and administrative billing entries, the undersigned **reduces petitioner's requested fees by ten percent**.

### iii.   Dispute with Former Counsel Mr. Thomas Gallagher

Ms. Roquemore's billing records include several entries relating to a dispute between D.S. and her former counsel, Mr. Thomas Gallagher.[8] D.S. is requesting reimbursement for costs that she believes are owed to her from Mr. Gallagher's interim fee award. See Pet. Mot., Exhibit 5 at 4-5; See also Pet. Mot., Exhibit 7

To the extent that petitioner has a dispute with her former counsel, the undersigned does not take a position as to that issue and is unable to render an opinion or decision regarding the dispute, as it is outside of the scope of her authority under the Vaccine Act. This Court is not the appropriate venue for such a dispute. Indeed, Ms. Roquemore acknowledges this in her billing records, stating that she "conduct[ed] research in regard to the jurisdiction of the Vaccine Program to deal with expert fee contract dispute between counsel and petitioner" and concluded that petitioner should seek separate counsel to handle this dispute. Pet. Mot., Exhibit 2 at 33-34. She also "[d]isucss[ed] the need for independent and separate counsel if [D.S.] wants to pursue this issue with Attorney Gallagher." Pet. Mot., Exhibit 2 at 32.

As this dispute outside of the Vaccine Program jurisdiction, the 18.7 hours Ms. Roquemore spent on this dispute from 2015 through 2018 will not be compensated by the Program, which results in a **reduction of $7,445.00**.[9]

---

[8] See Pet. Mot., Exhibit 2 at 19-22, 25, 27-9, 31-4, 36, 38, 41, 49, 69, 83.

[9] 1 hour at $365.00 per hour = a reduction of $365.00.
17.7 hours at $400.00 per hour = a reduction of $7,080.00.
Total reduction ($365.00 + $7,080.00) = $7,445.00.

7

### iv. Time Spent Responding to Order Dated September 14, 2017

In petitioner's status report filed in response to the order dated September 14, 2017, which sought clarification on several issues with her motion, Ms. Roquemore included an updated billing log that included 9.1 hours of time spent responding to the order. It is well-established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez, 2009 WL 2568468. Petitioner bears the burden of documenting the fees and costs claimed. Id. at *8. As petitioner's motion should have been complete and clear when it was filed, the time spent responding to the order and providing clarification will not be compensated, **resulting in a reduction of $2,863.10**.

### B. Reasonable Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $42,244.35 in costs incurred by her counsel and $16,560.82 in her own out-of-pocket expenses. Pet. Mot. at 2.

### i. Attorneys' Costs

The majority of petitioner's requested costs consist of $41,296.79 to reimburse fees and expenses for her life care planner. Pet. Mot. at 2. The remaining $747.56 in requested costs are to reimburse counsel for costs related to copying and postage. Pet. Mot., Exhibit 4 at 2. Petitioner's counsel was able to provide invoices for most of her postage charges, but was unable to provide supporting documentation for the charges related to in-house photocopying. Status Report dated September 19, 2017. This court and other federal courts have accepted a usual rate of 20 cents per page as reimbursement for in-house photocopying expenses. Fragoso v. Sec'y Health & Human Servs., No. 08-236, 2011 WL 300139 (Fed. Cl. Spec. Mstr. Jan. 6, 2011); Chenault v. Dorel Industries, Inc., No. A-08-CA-354-SS, 2010 WL 3064007 (W.D.Tex. Aug. 2, 2010); Bennuzzi v. Board of Educ. of City of Chicago, No. 09 C 3510, 2010 WL 3038101 (N.D.Ill. July 30, 2010). In addition, special masters have previously reduced a fee award for copying costs when counsel was unable to provide details regarding the cost per page or the number of pages copied. Pinegar v. Sec'y of Health & Human Servs., No. 90-3375V, 1997 WL 438761 (Fed. Cl. Spec. Mstr. July 22, 1997).

As petitioner's counsel was unable to provide supporting documentation regarding the number of pages she is copying and the rate she is charging the Program per page, the undersigned is unable to make a determination regarding the reasonableness of the $638.20[10] counsel incurred for in-house photocopying. The undersigned will award counsel's costs in this instance, but cautions that costs submitted without adequate supporting documentation will not be reimbursed in the future.

---

[10] See Pet. Mot., Exhibit 4 at 2.

### a. Life Care Planner Costs and Expenses

The remainder of attorneys' costs requested by petitioner are for the reimbursement of fees and expenses for her life care planner, Ms. Liz Holakiewicz, RN. Pet. Mot. at 2. Fees for experts are subject to the same reasonableness standards as fees for attorneys. Baker v. Sec'y of Health & Human Servs., No. 99-653, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005). The reasonable amount of an expert's compensation is determined using the same lodestar method used to determine the reasonable amount of compensation for an attorney. Simon v. Sec'y of Health & Human Servs., No. 05-914V, 2008 WL 623833, at *1. (Fed. Cl. Spec. Mstr. Feb. 21, 2009); Kantor v. Sec'y of Health & Human Servs., No. 01-679V, 2007 WL 1032378, at *4-8 (Fed. Cl. Spec. Mstr. Mar. 21, 2007).

Ms. Holakiewicz requests an hourly rate of $250.00 for work she performed on the case from September 2015 to January 2017. Pet. Mot. at Exhibit 16. In 2013, Special Master Millman awarded Ms. Holakiewicz a rate of $225.00 per hour, citing to her more than 23 years of extensive experience as a life care planner and registered nurse. Brown v. Sec'y of HHS, No. 09-0426V, 2013 WL 1790212, at *5 (Fed. Cl. Spec. Mstr. April 8, 2013). Ms. Holakiewicz's requested rate of $250.00 per hour was recently approved by Special Master Roth. Davis v. Sec'y of Health & Human Servs., No. 14-978, 2017 WL656304, at *3 (Fed. Cl. Spec. Mstr Jan. 23, 2017). I also find Ms. Holakiewicz's requested rate to be reasonable and will award it in full.

The second factor in the lodestar formula is a reasonable number hours expended. Ms. Holakiewicz requests reimbursement for 149.6 hours expended on the case from September 2015 to January 2017. Pet. Mot. at Exhibit 16.

Ms. Holakiewicz's billing records include an excessive amount of communication, both with Ms. Roquemore and with D.S.[11] Of the 149.6 hours Ms. Holakiewicz billed to the case, over half are for emails and phone calls with Ms. Roquemore and D.S.[12] Ms. Roquemore has been cautioned in the past that her communication with Ms. Holakiewicz is excessive. Brown, No. 09-0426V, 2013 WL 1790212, at *2; Torday, No. 07-372V, 2011 WL 2680687, at *8. In Torday, former Special Master Golkiewicz "emphasized that with an experienced life care planner, there is no need for extensive attorney involvement." Torday, No. 07-372V, 2011 WL 2680687, at *9. While counsel does play a role in the life care planning process, Ms. Roquemore is communicating excessively with her life care planner during the process, which causes both Ms. Roquemore and Ms. Holakiewicz to bill excessively for communication with each other. As previously discussed, this type of excessive billing is disfavored. I will thus echo my colleague's warnings to Ms. Roquemore regarding her excessive communications with Ms. Holakiewicz and caution her that excessive communication with her life care planner may not be fully reimbursed in the future.

---

[11] See generally Pet. Mot. at Exhibit 16.

[12] Ms. Holakiewicz billed 43.35 hours for correspondence and phone calls with Ms. Roquemore, and 35.30 hours for correspondence and phone calls with D.S. Pet. Mot. at Exhibit 16.

Like Ms. Roquemore, Ms. Holakiewicz also billed excessively for communication with petitioner.[13] Ms. Holakiewicz billed 35.30 hours for phone calls and emails with D.S.[14] While some communication between the Life Care Planner and the client is to be expected, the undersigned finds that the extent to which Ms. Holakiewicz communicated with D.S. appears to be excessive and will not be compensated in full.

Ms. Holakiewicz's billing records also include several entries for performing administrative tasks such as scheduling appointments and telephone conferences.[15] For example, on December 21, 2015, Ms. Holakiewicz billed 0.3 hours to "set up time to talk with Dr. Schecter." Pet. Mot, Exhibit 1 at 4. On December 29, 2015, she billed another 0.3 hours to schedule conference calls with D.S.'s treating doctors. Id. at 5. In total, Ms. Holakiewicz billed 4.6 hours for entries that are better classified as administrative time.[16] These entries do not constitute billable time, and the undersigned will thus reduce the final fee award accordingly.

Ms. Holakiewicz also billed 19.55 hours spent traveling at a full hourly rate.[17] The Vaccine Program routinely compensates at half a normal rate for time spent traveling. See Kuttner v. Sec'y of Health & Human Servs., No. 06-195V, 2009 WL 256447, *10 (Fed. Cl. Spec. Mstr. Jan. 16, 2009); Carter v. Sec'y of Health & Human Servs., No. 04-1500V, 2007 WL 2241877, *6 (Fed. Cl. Spec. Mstr. Jul. 13, 2007); Scoutto v. Sec'y of Health & Human Servs., No. 90-3576, 1997 WL 588954, *5 (Fed. Cl. Spec. Mstr. Sept. 5, 1997); Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); English v. Sec'y of Health & Human Servs., No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). Ms. Holakiewicz's rate will accordingly be reduced by half for the time she spent traveling, **resulting in a reduction of $2,443.75**.

Due to the volume of excessive and administrative billing entries, the undersigned will further **reduce Ms. Holakiewicz's fee by 10 percent.**

Petitioner submitted invoices for the expenses incurred by her life care planner while she was traveling to the life care visit. The undersigned has reviewed the submitted invoices for Ms. Holakiewicz's airfare, lodging, meals, and mileage, and in her experience finds them reasonable. These expenses will thus be awarded in full.

---

[13] See generally Pet. Mot. at Exhibit 16.

[14] Id.

[15] See Pet. Mot., Exhibit 16 at 2-7, 10, 12.

[16] Id.

[17] See Pet. Mot., Exhibit 16 and 2-3.

### ii. Petitioner's Costs

Petitioner's motion also includes a request for $16,560.82 in reimbursement for her own out-of-pocket expenses. Pet. Mot., Exhibit 5 at 3. Petitioner was previously awarded $12,400[18] in out-of-pocket expenses in a decision awarding interim fees issues on November 20, 2015. Decision dated November 20, 2015 (ECF No. 155).

Petitioner requests reimbursement for costs she incurred from May 2007[19] through April 2017. Pet. Mot., Exhibit 6 at 2-5. After reviewing the billing log and accompanying receipts, the undersigned has identified several expenses that are not compensable and will not be awarded. For the reasons set forth below, the undersigned will award $7,307.95 in reimbursement for petitioner's out-of-pocket expenses.

Petitioner requests reimbursement for $5,030.68 in office supplies she purchased to collect and manage her own records. See Pet. Mot. Exhibit 6 at 2-4. Several of the submitted expenses would normally be classified as attorney overhead costs and are not reimbursable by the Program[20]. See Whitener v. Sec'y of Health & Human Servs., No. 06-477, 2011 WL 1467919, at *8 (Fed. Cl. Spec. Mstr. Mar. 25, 2011) (finding record compilation costs and office supplies not compensable by the Program); Lamar v. Sec'y of Health & Human Servs., No. 99-584, 2008 WL 3845157 (Fed. Cl. Spec. Mstr. Jul. 30, 2008; Guy v. Sec'y of Health & Human Servs., No. 92-779, 38 Fed. Cl. 403 (1997). This amount also includes $1,043.28 for a scanner and its related accessories and software.[21] The undersigned is troubled that petitioner or her counsel would think this excessive expense would be compensable by the Program. Clients keeping their own records and charging the Program for their management and storage is not a common practice. It was not a necessary for petitioner to keep her records in such a fashion, and it was not a task she needed to undertake in order to bring this claim. Further, these represent expenses that are not normally compensable by the Program when billed by attorneys. For these reasons, the undersigned finds these costs to be unreasonable and they will thus not be awarded, **resulting in a reduction of $5,030.68**.

---

[18] This amount represents reimbursement for the expert services of Dr. Axelrod and Dr. Schechter. Decision dated June 20, 2015, at 5-6.

[19] Petitioner requests reimbursement for costs incurred nearly three years prior to filing her petition on February 12, 2010. Ms. Roquemore in a status report that D.S. began recording expenses related to her injury in anticipation of litigation soon after the onset of her symptoms, but she did not immediately obtain an attorney to file her claim. Status Report dated September 19, 2017, at 1-2.

[20] These include, *inter alia*, binders, folders, highlighters, post-it notes, bins to store files, and the frequent and vague entry that reads "litigation supplies".

[21] Pet. Mot., Exhibit 6 at 3-4.

11

Petitioner requests $1,853.17 in reimbursement for travel expenses not related to the bringing of this claim.[22] These include expenses related to travel on July 25, 2007, more than two years prior to filing her petition.[23] Petitioner also requests reimbursement for lodging expenses in Washington, D.C., related to a court appearance on April 27-28, 2014.[24] It is unclear to what court appearance these entries are referring, as the docket does not reflect a hearing or any other proceeding which would have necessitated the appearance of petitioner or even petitioner's counsel during the entire month of April 2014. The expenses related to these two unexplained trips will not be awarded, **resulting in a reduction of $1,853.17**.

Petitioner also requests reimbursement for costs that appear to be part of the amount in dispute with her former counsel.[25] As stated above, the undersigned takes no position as to that dispute and this is not the appropriate venue to render a decision as to the disputed costs. As such, the undersigned will not award these disputed costs to petitioner, **resulting in a reduction of $2,369.03**.

The undersigned will award the remainder of petitioner's requested out-of-pocket expenses. This includes $1,000 as reimbursement for the expert services of Dr. Hogen.[26] This also includes costs related to obtaining, copying, and shipping her medical records, expenses related to her travel to the hearing, and the retainer she paid to Ms. Holakiewicz. The undersigned has reviewed the submitted receipts and invoices associated with petitioner's out-of-pocket expenses and will award them, but notes that they border on excessive.

After reducing the requested costs for the reasons detailed above, the undersigned awards $7,307.95 in out-of-pocket expenses to petitioner, **a reduction of $9,252.88**.

---

[22] See Pet. Mot., Exhibit 6 at 2-4.

[23] These include costs for airfare, lodging, parking, and a rental car. Id. at 2.

[24] See Id. at 4.

[25] See Pet. Mot., Exhibit 6 at 3-4; see also Pet. Mot., Exhibit 5 at 4-5; Pet. Mot., Exhibit 7.

[26] Petitioner requested reimbursement for this $1,000 paid to Dr. Hogen in her previous motion for interim attorneys' fees and costs, but it was denied because petitioner failed to file an invoice for the services provided. Decision dated June 20, 2015 at 6. Petitioner filed an invoice from Dr. Hogen with the current motion and the undersigned will now award this expense. See Pet. Mot., Exhibit 6 at 3, 98-99.

### III. Conclusion

For the reasons set forth above, the undersigned finds that petitioners are entitled to an award of attorneys' fees and costs. The amount of the award is as follows:

| | |
|---|---:|
| Requested attorneys' fees: | $157,169.60 |
| Reductions (dispute with former counsel) | - $7,445.00 |
| Reductions (time spent responding to order) | - $2,863.10 |
| Reductions (10% for billing deficiencies) | - $14,686.15 |
| **Adjusted Fees Total:** | **$132,175.35** |
| | |
| Requested attorneys' costs: | $44,244.35 |
| Reductions (Life Care Planner costs) | - $6,349.05[27] |
| **Adjusted Costs Total:** | **$37,895.30** |
| | |
| **Total Attorneys' Fees and Costs Awarded:** | **$170,070.65** |
| | |
| Requested petitioner's costs: | $16,560.82 |
| Reductions (office supplies and overhead) | - $5,030.68 |
| Reductions (unrelated travel) | - $1,853.17 |
| Reductions (dispute with former counsel) | - $2,369.03 |
| **Total Petitioner's Costs Awarded:** | **$7,307.94** |

**Accordingly, the undersigned awards the total of $177,377.59[28] as follows:**

- **A lump sum of $170,070.65, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel, Lisa Roquemore; and**

- **A lump sum of $7,307.94, representing reimbursement for petitioner's costs, in the form of a check payable to petitioner.**

---

[27] Requested amount for life care planner = $41,496.79; after reducing by $2,443.75 for travel time and then a further 10 percent for billing deficiencies ($3,905.30), the total amount reduced is $6,349.05.

[28] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir.1991).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgement in accordance herewith.[29]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[29] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.